AO 91 (Rev 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF MISSOURI

TNWD CASE #
2:20mj081 cgc

United States of America
v.
TERICA TANEISHA ELLIS

Case No. 4:20 MJ 7194 SPM

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 14, 2016__ in the county of __City of St. Louis__ in the __Eastern__ District of __Missouri__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1958 | CT. 1 - Conspiracy to Use Interstate Commerce Facilities in Commission of Murder-for-Hire, resulting in death |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Christopher Faber, Special Agent, FBI
*Printed name and title*

Sworn, to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: 07/08/2020

_____
*Judge's signature*

City and state: St. Louis, Missouri

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

# SUPPRESSED COMPLAINT AFFIDAVIT

1. I, Christopher Faber, am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since 2009. I am currently assigned to the St. Louis, Missouri Division of the FBI's Violent Crime Task Force, where I investigate violent crimes, to include homicides. I am familiar with and have used normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, search and arrest warrants, informants, pen registers, precision location information, confidential sources, undercover agents, and court-authorized wire interceptions. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other members of the investigative team and witnesses.

2. The information contained in this Affidavit is submitted for the sole purpose of demonstrating that probable cause exists for the issuance of a Criminal Complaint. It does not contain all of the information known to me and/or other law enforcement officers who, like myself, are actively involved in this investigation. Rather, it contains only those facts that I believe are necessary to establish the requisite probable cause for the requested Complaint.

3. As outlined herein, there exists probable cause to believe that Terica ELLIS conspired with Conspirator One and/or others known and unknown to investigators at this time to use a facility of interstate commerce, namely, a cellular telephone, to commit a murder-for-hire in exchange for United States currency, in violation of Title 18, United States Code, Sections 1958 and 2.

4. On March 14, 2016, at approximately 8:02pm, Andre Montgomery (hereinafter "Montgomery") was killed by gunfire at 3964 Natural Bridge Avenue, which is located in the City of St. Louis, within the Eastern District of Missouri. Montgomery's cellular

1

telephone was located in close proximity to his body and was forensically examined following the murder. Witnesses at the scene of the homicide indicated that Montgomery went outside to meet someone after receiving a telephone call, and was shot and killed shortly thereafter. The forensic examination of Montgomery's phone, and subsequent investigation, revealed that the two people he spoke to within the 10 minutes prior to his death were his friend, K.T., and someone later identified to be Terica ELLIS, utilizing phone number (314) 609-4415 (hereinafter "ELLIS phone #1"). ELLIS phone #1 had been saved in Montgomery's telephone under the contact name "Alexusdagreat." Between 8:00pm and 8:02pm, witness K.T. advised that, while speaking with Montgomery, s/he heard at least one female voice in the background before the call disconnected. As further described herein, the location information associated with ELLIS phone #1 put the phone in the vicinity of the murder at the time the murder occurred. Further investigation also revealed that ELLIS phone #1 was a pre-paid telephone that was activated the day of the murder, then ceased all activity the following day on March 15, 2020.

5. In attempting to identify "Alexusdagreat," ultimately identified as Terica ELLIS, investigators also identified communications in Montgomery's telephone with the cellular telephone number ███-███-5151 (hereinafter "ELLIS phone #2"), a number also attributable to Terica ELLIS, as described herein. In a text message dated Sunday, March 6, 2016, the owner of ELLIS phone #2 advised Montgomery that she was on her way back to Memphis and would be in St. Louis on Thursday (which would have been March 10, 2016). In a text message dated March 14, 2016, Montgomery asked the owner ELLIS phone #2 to identify her "IG" (a common abbreviation for one's Instagram account name). Montgomery received a response of "Alexusdagreat" from ELLIS phone #2. Furthermore,

2

on the day of the homicide at 2:42pm, Montgomery received a text message from ELLIS phone #1 telling him to delete the "other number" and to start using ELLIS phone #1 instead. This led investigators to believe that ELLIS phone #1 (saved as "Alexusdagreat" in Montgomery's phone) and ELLIS phone #2 were both being used by the same person. As described herein, investigators later identified this person as Terica ELLIS.

6. Through a subpoena to Instagram for information relative to the "Alexusdagreat" account, investigators learned that the "Alexusdagreat" account had a registered email address of tericaellis@gmail.com. Investigators located an email message in Montgomery's cellular telephone from the email address tericaellis@gmail.com that was dated March 10, 2016, in which Terica ELLIS advised Montgomery, "I'm on my way in town," which is consistent with the information she provided to Montgomery in the aforementioned text messages. Through follow up investigation, the investigative team learned that ELLIS maintained a primary residence in Memphis, Tennessee and occasionally traveled to St. Louis, Missouri. In the minutes after Montgomery's murder, location information associated with the pre-paid ELLIS phone #1 showed the phone heading south on Interstate 55 before ceasing activity in Memphis, Tennessee the following day.

7. A search warrant was served on the tericaellis@gmail.com account. In the contents of an email found during the search, ELLIS identified her telephone number as ███-███-5151 (ELLIS phone #2)[1], the same number that had contacted Montgomery and advised him that her Instagram account name was "Alexusdagreat" on March 14, 2016.

---

[1] In another email obtained during this same search warrant, ELLIS identified her phone number as ███-███-5141, but investigators believe this was a typo based on subsequent emails found in the account.

3

8. In examining the victim's familial and social connections, investigators subsequently discovered that in October 2014, Conspirator One attempted to obtain a $250,000.00 life insurance policy, for which he was the sole beneficiary, on Montgomery through Americo. Two weeks later, Conspirator One attempted to obtain a second life insurance policy on Montgomery in the amount of $200,000.00, in addition to an accidental death rider in the amount of $250,000.00, through Foresters Insurance. This Foresters policy issued, listing Conspirator One as the sole beneficiary, and Conspirator One paid the monthly premiums directly from Conspirator One's checking account. In March of 2015, Conspirator One attempted to obtain a replacement policy on Montgomery in the amount of $249,999.00, but the application was denied. Four (4) days after Montgomery's murder, a man identifying himself as Conspirator One, and using a phone number known to belong to Conspirator One, called Foresters in an attempt to collect on the policy. Despite several additional efforts to collect on the policy since Montgomery's murder, Foresters has yet to pay out on the policy due to Conspirator One's failure to provide several requested documents.

9. Through subpoenas to the life insurance companies and to U.S. Bank, investigators identified two phone numbers for Conspirator One: ███ ███-0081 (hereinafter "conspirator phone #1") and ███ ███-6102 (hereinafter "conspirator phone #2"). A review of toll records determined that ELLIS phone #1 was primarily in contact with Montgomery and another cellular device with the number (314) 607-8132 (hereinafter "conspirator phone #3") on the day of Montgomery's murder. Records indicate that both ELLIS phone #1 and conspirator phone #3 were pre-paid phones that were activated on the day of Montgomery's murder then became inactive the following day, on March 15, 2016.

4

Page 6 redacted for the following reason:
- - - - - - - - - - - - - - - - - - - -

12. A review of toll records and text communications to Montgomery's phone revealed that Montgomery texted ELLIS phone #1 the address of the house where he was ultimately murdered at 7:07pm on March 14, 2016. At 7:07pm, ELLIS also placed a phone call to conspirator phone #3.

13. On March 15, 2016, the day after Montgomery's homicide, ELLIS deposited $3,020.00 in U.S. currency into her checking account at the Orange Mound branch of the First Horizon (Tennessee) Bank in Memphis, Tennessee. Prior to this deposit, ELLIS's checking account had a balance of $-299.83 after multiple overdraft charges. On the same date, ELLIS also deposited $4,340.00 into a savings account opened that day at the same bank in Memphis, Tennessee, for a total of $7,360.00 in cash deposits. On March 17, 2016, ELLIS deposited an additional $1,900.00 in U.S. currency into her checking account at the same branch. Other than one other cash deposit in the amount of $100.00, no other cash deposits were made to ELLIS's account in all of 2016.

14. On March 22, 2016, ELLIS flew from Memphis, Tennessee to Los Angeles, California with her mother, S.D., and ELLIS's daughter. Location data obtained from S.D.'s cellular telephone shows that on at least one occasion, she was in the same location as Conspirator One. ELLIS and her family returned to Memphis, Tennessee on March 28, 2016.

15. On April 30, 2016, Conspirator One sent ELLIS $700.00 in U.S. Currency via Western Union.

16. Based on the foregoing, your Affiant asserts there is probable cause to believe that Terica ELLIS used a cellular telephone, a facility of interstate commerce, traveled interstate, and conspired with Conspirator One and others to affect the murder of Andre Montgomery in exchange for sums of U.S. Currency, in violation of Title 18, United States Code, Sections 1958 and 2.

I state under the penalty of perjury that the foregoing is true and correct.

7/8/2020
DATE

CHRISTOPHER FABER
Special Agent
Federal Bureau of Investigation (FBI)

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this 8th day of July, 2020.

SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

Pages 9 through 14 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - - -